**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ROSE A.,**

      **Plaintiff,**

**vs.**                                  **CIVIL ACTION NO. 3:23-CV-00551**

**MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered August 16, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is the Plaintiff's Brief in support of her complaint (ECF No. 5) and the Defendant's Brief in Support of Defendant's Decision (ECF No. 6).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 5), **GRANT** the Defendant's request to affirm the final decision (ECF No. 6); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed her application for Title II benefits on May 11, 2020 alleging disability beginning April 7, 2020 due to spondylosis, anxiety, depression, fibromyalgia, and a herniated disc at L4 and L5. (Tr. at 16, 210) Her claim was initially denied on December 9, 2020 (Tr. at 16, 57-72) and again upon reconsideration on October 13, 2021 (Tr. at 16, 74-79). Thereafter, she filed a written request for hearing on November 8, 2021 (Tr. at 109-110).

An administrative hearing was held on February 15, 2023 before the Honorable Maria Hodges, Administrative Law Judge ("ALJ"). (Tr. at 36-55) On March 1, 2023, the ALJ entered an unfavorable decision. (Tr. at 13-35) On March 23, 2023, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 187) The ALJ's decision became the final decision of the Commissioner on June 23, 2023 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On August 15, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed her Brief (ECF No. 5), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), and finally, the Plaintiff filed her Reply Brief reiterating her arguments in support of remand (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 50 years old as of the alleged onset date, a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d). (Tr. at 27) She

has a high school education, and past relevant work as a stock clerk. (Tr. at 26-27)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.
>
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the

scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff met the insured status requirements through December 31, 2025. (Tr. at 18, Finding No. 1) Next, the ALJ determined that she also

satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy; chronic obstructive pulmonary disease; and urge incontinence. (Tr. at 19, Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21, Finding No. 4) The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except she

> can lift and carry 25 pounds occasionally, 20 pounds frequently; occasionally climb; frequently balance as defined by the SCO of the DOT; frequently kneel; occasionally stoop, crouch, and crawl; avoid concentrated exposure to extreme cold, humidity, vibration, atmospheric conditions as defined by the SCO of the DOT, and hazards of moving machinery and unprotected heights; needs work where she has access to a restroom within 100 yards; and can stand/walk 30 minutes at a time, 4 hours total of an 8-hour workday.

(Id., Finding No. 5)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. at 26, Finding No. 6) However, at step five, the ALJ found that based on her age, education, past relevant work and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Tr. at 27, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability since April 7, 2020 through the date of the decision. (Tr. at 28, Finding No. 11)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff objects to the ALJ's RFC finding that she needs access to a bathroom within 100 yards because it fails to account for the frequency and duration of the Plaintiff's need to use the restroom. (ECF No. 5 at 3-6) The Plaintiff contends that the ALJ failure to make the specific

findings as to the frequency and duration for her bathroom use is contrary to this Circuit's jurisprudence from <u>Dowling v. Comm'r of Soc. Sec. Admin.</u>, 986 F.3d 377 (4th Cir. 2021). (<u>Id.</u>) Additionally, the Plaintiff argues the ALJ's evaluation of the medical opinion provided by Scott Davis, M.D., the Plaintiff's treating provider, is also contrary to <u>Dowling</u>: the ALJ did not reasonably find his opinion unpersuasive, especially because it was consistent with and supported by the evidence. (<u>Id.</u> at 6-12) The ALJ only focused on Dr. Davis's lift and carry limitation as being inconsistent with the record, but did not address how his other opined limitations were inconsistent and unsupported by the record – this makes meaningful judicial review impossible. (<u>Id.</u> at 12-14) The Plaintiff argues the final decision is not supported by substantial evidence and asks the Court to remand this matter. (<u>Id.</u> at 14)

In response, the Commissioner contends that the ALJ properly accounted for the Plaintiff's established functional limitations as they relate to her urinary incontinence in the RFC assessment, by identifying and analyzing her treatment history, diagnostic and clinical findings of record, and the medical opinion evidence. (ECF No. 6 at 8) There were no opinions of record concerning the frequency and duration of the Plaintiff's restroom breaks, but the ALJ accounted for the Plaintiff's urge to go to the restroom by incorporating close access to the facilities in the RFC determination. (<u>Id.</u> at 8-9) The Commissioner points out that contrary to <u>Dowling</u>, the Plaintiff here identifies no evidence in the record that is inconsistent with the RFC to the extent that the Plaintiff requires more access to a restroom at certain frequencies or duration; there is no substantial evidence necessitating a finding for additional unscheduled bathroom breaks beyond those inherently occurring during a workday. (<u>Id.</u> at 9) The Plaintiff did not testify how often or how long she needed a restroom, include statements concerning incontinence in her disability applications, or

mention this during a November 2020 consultative examination, but she did report improvement following surgery for this issue in September 2020. (Id. at 9-10) The Commissioner further argues that the ALJ appropriately found Dr. Davis's opinion was unpersuasive, and explained why in accordance with the pertinent legal standards. (Id. at 11-12) In addition, the Commissioner points out that contrary to the situation presented in the Dowling case, the ALJ not only cited the pertinent regulatory standards governing the RFC assessment, but also examined the Plaintiff's subjective complaints along with the medical and other evidence of record to support her RFC determination. (Id. at 13-14) Also, the ALJ was not required to expressly address each of Dr. Davis's opined limitations. (Id. at 15) In this case, the ALJ's determination is supported by substantial evidence, enjoys the support of the medical findings of two state agency physicians, and should be affirmed by this Court. (Id. at 16-17)

In reply, the Plaintiff argues there is no dispute that the ALJ did not consider frequency and duration for the Plaintiff's bathroom requirements, only urgency – this omission precludes judicial review, regardless of the improvement in her condition. (ECF No. 7 at 1-3) There is evidence that the Plaintiff still reported needing the bathroom as often as 4 to 5 times per day and to using an incontinence pad since her surgery in September 2020; the ALJ is still obligated to make a finding as to the frequency and duration of the Plaintiff's bathroom breaks, or at least explain how she concluded the Plaintiff would not have needed an unscheduled bathroom break during the workday. (Id. at 3) Because this Court has to fill in these blanks, judicial review is frustrated, and the case must be remanded. (Id. at 4)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

Regarding her incontinence, the Plaintiff had InterStim implanted in May 2016, and by March 2020, she reported not being able to change the settings on her InterStim, in addition to having pain in her buttocks and some vibrations in her vaginal area. (Tr. at 420) She also reported an increase in stress incontinence, urge incontinence, and feeling as if she was not emptying. (Id.) The Plaintiff reported a frequency of every half hour and having to get up during the night three to four times to urinate. (Tr. at 416) She underwent another InterStim placement in July 2020, and reported postoperatively in September 2020 that her urinary incontinence had improved, occasional urgency and nocturia, and denied increased urinary frequency and dysuria. (Tr. at 411) She reported urinating four to five times per day, and once to twice during the night; "[o]verall she is happy with voiding symptoms since InterStim placement." (Id.) During the relevant period, the Plaintiff routinely denied urinary urgency or changes in urinary frequency to her primary care provider, Dr. Scott Davis. (See, Tr. at 530, 541, 548, 558, 562, 568, 578, 584, 594, 600, 879)

With respect to the Plaintiff's back pain, an x-ray of her lumbar spine from May 2021 showed mild scoliotic curvature, discogenic degenerative changes, and no translational instability (Tr. at 476). A CT scan of the lumbar spine from November 2021 showed multilevel degenerative disc disease changes and facet degenerative changes, most pronounced at the L4-L5 level (Tr. at

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for Plaintiff's physical impairments.

662). An examination from November 2021 showed reduced range of motion of the lumbar spine, intact sensation, and diminished deep tendon reflexes (Tr. at 882). Neurosurgery nurse practitioner, Alicia Scott, APRN, examined the Plaintiff on January 7, 2022, noting intact sensation; normal deep tendon reflexes; normal range of motion; no paraspinal muscle spasm, point tenderness, or bony step-offs of the spine; 5/5 strength in the upper and lower extremities; a normal gait; and positive straight leg raise on the right (Tr. at 942). Ms. Scott diagnosed the Plaintiff with lumbar degenerative disc disease with radiculopathy (Id.). A January 2022 lumbar spine x-ray showed degenerative changes with no acute osseous abnormality (Tr. at 962).

Neurosurgeon Panayotis Ignatiadis, M.D., examined the Plaintiff on March 23, 2022 and noted intact sensation; no abnormal deep tendon reflexes; normal range of motion; excellent motility of the dorsal and lumbar spine; no paraspinal muscle spasm, point tenderness, or bony step-offs of the spine; 5/5 strength in the upper and lower extremities; a normal gait; and negative straight leg raise testing (Tr. at 1066-1067). A lumbar spine CT scan from March 2022 revealed mild disc bulging at L4-L5 and L5-S1 but no significant canal stenosis (Tr. at 958). The Plaintiff received a lumbar epidural steroid injection in June 2022 (Tr. at 1039), and she reported more than fifty percent improvement with pain at her follow up appointment in September 2022 (Tr. at 1085). She received another epidural steroid injection in November 2022 (Tr. at 1080).

Medical Opinion Evidence:

In November 2020 and October 2021, respectively, state agency physicians Narendra Parikshak, M.D., and Rabah Boukhemis, M.D., opined that the Plaintiff can lift and carry twenty-five pounds occasionally and twenty pounds frequently; stand and walk for a total of about six hours each during an eight-hour workday; sit for a total of about six hours in an eight-hour

workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, and kneel; occasionally crouch and crawl; and should avoid concentrated exposure to extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. at 66-69, 76-87)

In November 2020, consultative examiner Patsy Jackson, APRN, opined that the Plaintiff "may" have trouble with work activity that requires climbing stairs or squatting (Tr. at 436). On examination, the Plaintiff walked independently without use of an assistive device, her gait was normal, muscle strength testing was 5/5, she could tandem walk and knee squat slowly without complaints of pain, perform hand grips with 5/5 strength bilaterally, and was able to perform fine manipulation and gross dexterous movements with each hand (Tr. at 435).

In November 2022, Scott Davis, M.D., opined that the Plaintiff can sit for about two hours total in an eight-hour workday; stand for about two hours total in an eight-hour workday; needs to take three-to-four unscheduled breaks per day for about twenty minutes; can lift and carry about ten pounds; can use both hands 66 to 84 percent of the workday for reaching, handling, and fingering; and would miss four days of work per month (Tr. at 1063).

**The Administrative Hearing:**[2]

Plaintiff's Testimony:

The Plaintiff testified that regarding her incontinence issues, while her new implant does not work as well as her old one, she does not regularly have accidents, but "a couple here and there." (Tr. at 44) If she feels the urge, she needs to get to a restroom right away. (Id.)

---

[2] Because the Plaintiff's appeal focuses solely on her physical impairments and their related limitations, the undersigned omits the testimony and limitations associated with the Plaintiff's psychological impairments.

She stated what bothers her the most and prevents her from working are her back and legs; surgery has not been recommended pending further testing, however. (Tr. at 45) The Plaintiff testified that because of her back, some days she cannot stand, reach, or bend over; she estimated she could sit for 10 to 15 minutes. (Tr. at 46) She estimated she could lift and carry about five pounds across the room. (Id.) She stated cold weather made her legs hurt a little worse and she would take hot baths to ease the pain; she sleeps about four or five hours in a typical night, but does not nap during the day. (Id.) The Plaintiff denied having to use an assistive device to get around. (Tr. at 48)

The Plaintiff testified that she attends to her personal needs, but sometimes requires help getting dressed because she is unable to bend to put on pants, or raise her arms to get a shirt on. (Tr. at 47) She does light household chores like dusting or washing dishes. (Id.) It takes her longer to do chores because she cannot move around like she used to and sometimes gets out of breath. (Tr. at 49)

Vocational Expert's Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the vocational expert testified that the individual could not perform her past relevant work, but could perform other light exertional jobs, including cashier, order caller, and ticket seller. (Tr. at 51-52) In response to questioning by the Plaintiff's attorney, the vocational expert denied the access for a restroom within 100 yards was an accommodation by an employer. (Tr. at 52) The vocational expert testified that if the individual needed to alternate between sitting and standing for thirty minutes in each position, for four hours out of an eight-hour workday, it would not affect the light jobs he identified. (Tr. at 53) However, if the standing and

sitting option were reduced to three hours in an eight-hour workday, that would eliminate these jobs as well as other light jobs. (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment:

As an initial matter, it is important to remember that the RFC determination is the most a claimant can do despite her restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record – no medical opinion

necessary. See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed. App'x. 226, 230-231 (4th Cir. 2011). Of significance here, is that the ALJ adopted many of the opined RFC limitations provided by the state agency medical consultants, having found that their opinions were persuasive as they were supported by their references to the record, in addition to being consistent with Ms. Jackson's opinion that the Plaintiff would have trouble climbing stairs and squatting. (Tr. at 25, 433-437, 942, 1067)[3] The ALJ also noted that Ms. Jackson observed that the Plaintiff's ability to ambulate did not appear restricted, which was consistent with the treatment records, as well as Ms. Jackson's own examination findings. (Tr. at 25-26)

In assessing the Plaintiff's RFC, the ALJ recalled the Plaintiff's testimony that her InterStim was replaced in 2020, though it does not seem to work as well as the one placed in 2016. (Tr. at 22) Also, the ALJ acknowledged the Plaintiff's report that she still had a couple of accidents despite an adjustment to the stimulation, but she does not have accidents regularly (Id.); however, when the Plaintiff feels the urge, she needs to go to the restroom right away (Id.). Additionally, the ALJ noted the Plaintiff testified that her back and leg pain bother her the most, but because of her InterStim placement, she cannot get an MRI to verify the need for surgery. (Id.) The ALJ also considered the Plaintiff's allegations that her "back impairment affects just about everything." (Id.) For instance, she could not bend over or sit some days, can only stand and walk for about ten to fifteen minutes, maybe twenty, depending upon how aggravated her spine is at the time. (Id.) Also,

---

[3] In addition to citing Ms. Jackson's consultative evaluation report, the ALJ referenced treatment notes from St. Mary's Neurosurgery, Valley Health Systems, dated January 7, 2022 and March 23, 2022, concerning the Plaintiff's complaints of pain in her neck, back and legs; both records indicated that upon physical examination, the Plaintiff's gait was normal, with erect posture, normal range of motion, no swollen joints, intact sensation, and full strength in the upper and lower extremities.

the ALJ noted the Plaintiff alleged that she can lift and carry about five pounds across the room, and that cold weather bother her legs more; she is up and down during the night, and takes hot baths to ease her pain so she can get rest; she only sleeps about four to five hours a night, but does not nap during the day; also, heat helps her pain, whereas ice irritates more than it helps. (Id.)

The ALJ considered the Plaintiff's testimony that although she can attend to her personal needs, somedays she needs assistance with putting on her pants because she cannot bend, or putting on her shirts because she is unable to raise her arms. (Id.) Although her husband does the grocery shopping, the Plaintiff testified that she sometimes goes with him; she can do dishes or dust, but is unable to vacuum. (Id.) The ALJ noted the Plaintiff reported having no side effects from her medications. (Id.)

The ALJ also observed that the record showed treatment for the Plaintiff's urge incontinence, and that after removal of her old InterStim and replacement with a new one in July 2020, her urinary incontinence improved (Tr. at 24, 411), and that the Plaintiff denied feelings of urinary urgency and frequency since the placement (Tr. at 24, 530, 541, 562). From this evidence, the ALJ determined access to a restroom within 100 yards accommodated the Plaintiff's testimony that she needs to get to a restroom quickly when she feels the urge to go to the bathroom. (Tr. at 24; see also, Tr. at 25)

Regarding the Plaintiff's history of back pain with radiculopathy, the ALJ also recognized that the record showed that the Plaintiff received conservative treatment for this issue, including medications, steroids, muscle relaxers, and physical therapy, but she continued to report back and leg pain. (Tr. at 23, 470-475, 495-513, 527-641, 873-953, 954-1021)[4] The ALJ noted that in May

---

[4] These records are from St. Mary's Medical Center/Valley Health Systems and are dated from April 26, 2019 through March 10, 2022.

2021 and November 2021, physical examination revealed the Plaintiff presented with bilateral paraspinal musculature tenderness and spasm, reduced range of motion, and an abnormal gait (Tr. at 23, 552, 882). However, during examinations in January 2022 and March 2022, with neurosurgery nurse practitioner Alicia Scott, APRN and neurosurgeon Panayotis Ignatiadis, M.D., respectively, the Plaintiff did not exhibit such abnormalities (Tr. at 23, 942, 1067). The ALJ further noted that both Ms. Scott and Dr. Ignatiadis found surgery unnecessary (Tr. at 23.) The ALJ reviewed additional treatment records for the Plaintiff's back pain with radiculopathy, noting that she received a lumbar epidural steroid injection in June 2022, and that afterwards, the Plaintiff reported her pain was more than fifty percent improved during a follow up appointment in September (Tr. at 23, 1038-1044, 1085); the Plaintiff received another injection in November 2022 (Tr. at 23, 1078-1088). Ultimately, from the evidence provided by the medical records as well as the Plaintiff's own self-reports, the ALJ determined she remained capable of the RFC restrictions, *supra*, finding the limitations "consistent with 5/5 strength in the upper extremities, 5/5 grip strength in both hands, decreased range of motion of the lumbar spine, and positive straight leg raise on the right. (Tr. at 23-24, 882, 942)[5]

Regarding the Plaintiff's urge incontinence, it is apparent that the ALJ considered the evidence of record that both corroborated and detracted from the Plaintiff's claims concerning her need for quick access to a restroom when she feels the urge to use one. While the Plaintiff takes issue that close proximity to the facilities does not address the frequency and duration of her potential bathroom breaks, the record shows that since the InterStim placement in July 2020, the

---

[5] The ALJ referenced treatment notes from Dr. Davis, dated November 11, 2021, and from Ms. Scott, dated January 7, 2022.

Plaintiff's urinary urgency and frequency issues were resolved. To that extent, the Plaintiff's situation is unlike the one presented in <u>Dowling</u>[6] – there is no additional evidence, even from the Plaintiff herself, that suggests she needs any additional bathroom breaks throughout the workday. There is no dispute that the Plaintiff's bathroom requirements are a critical component to determining her ability to function during a workday – that is when the urge to urinate arises, she needs to get to a restroom quickly. The ALJ addressed this requirement by including access within 100 yards of the Plaintiff's workstation.

Of further interest here is that the Plaintiff testified (and indicated in her applications for benefits) that her main problem with returning to work was due to her back pain with radiculopathy, not due to urge incontinence and/or frequent and prolonged use of a restroom. Although the Plaintiff argues that merely positioning her within a hundred yards from a restroom does not account in any way for frequency and duration of her need to use the restroom, there is no substantial evidence in the record before the ALJ that the Plaintiff had to visit the restroom many times throughout the day or that she would be using a restroom for longer periods of time. The Court acknowledges the Fourth Circuit's jurisprudence following the Dowling decision, and its progeny, and notes that the significant factors driving those decisions are that the claimants (and recognized by the adjudicators themselves) endorsed having to use the bathroom frequently throughout the day. See <u>Malone v. Kijakazi</u>, 2023 WL 6157347, at *4 (D.S.C. Sept. 21, 2023); <u>Lewis v. Kijakazi</u>, 2022 WL 1652424, at *5 (E.D.N.C. May 4, 2022), *report and recommendation*

---

[6] As observed by the Fourth Circuit, "[o]bviously, the need to visit the bathroom many times throughout the day impacts one's ability to work." See <u>Dowling v. Commissioner of Social Security Administration</u>, 986 F.3d 377, 389 (4th Cir. 2021). The Fourth Circuit also noted the RFC "was impacted by [the plaintiff's] need to work near a restroom and take frequent bathroom breaks[]" given the "considerable evidence in the record demonstrating that Appellant regularly experienced diarrhea and incontinence[]" <u>Id</u>. In the case at bar, the Plaintiff testified to having to having a "couple" of accidents "here and there, not regularly" and denied having accidents like she had prior to the July 2020 placement of her InterStim, but did endorse having to get to a restroom right away when the urge came on. (Tr. at 44)

*adopted*, 2022 WL 1651451(E.D.N.C. May 24, 2022); Davis v. Comm'r of Soc. Sec., 2011 WL 442118, at *1 (N.D.W. Va. Feb. 2, 2011); Bartley v. Kijakazi, 2022 WL 1416425, at *2 (W.D.N.C. May 4, 2022).

Of greater significance is that the ALJ has recognized that with respect to the Plaintiff's physical impairments, the Plaintiff's symptoms were significantly improved or managed with treatment. See 20 C.F.R. § 404.1529(c)(iv)-(v) (evaluation of symptoms includes consideration of effectiveness of medication and treatment); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") On that note, the ALJ reasonably determined an RFC assessment that accommodated the Plaintiff's limitations as established by the overall evidence of record. While the Plaintiff disagrees with that assessment, and asks this Court to remand based on unmade findings that are not corroborated by the overall record of evidence, that would amount to an impermissible re-weighing of the conflicting evidence of record: a court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

To the extent the Plaintiff asserts that remand is warranted due to the ALJ's only referring to Section 404.1545 and SSR 96-8p in boilerplate is comparable to the situation presented in Dowling, 986 F.3d at 387 (ECF No. 5 at 8-9), the foregoing demonstrates this assertion lacks merit. The Fourth Circuit did not hold that remand was required for an adjudicator mentioning these regulatory frameworks only once – in that case, the ALJ did not cite to these regulatory frameworks *at all*, but instead relied upon the incorrect regulatory framework: SSRs 96-7p and 16-3p, which

pertain to the evaluation of a claimant's subjective complaints. Id. And further unlike Dowling, the ALJ here considered the Plaintiff's subjective complaints under the two-step test for symptom evaluation, and then went beyond her findings relating to the Plaintiff's subjective complaints when assessing her RFC by considering her response to treatment and medication, as well as the findings of two state agency medical consultants, discussed *infra*. Thus, the ALJ did not treat the RFC and symptom evaluation as "one and the same," contrary to Dowling; ultimately, as the ALJ explained, she considered "all of the claimant's medically determinable impairments, including those that are not severe" when assessing the RFC (Tr. at 18). See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (providing that where the ALJ states she has carefully considered the entire record, "absent evidence to the contrary," a reviewing court should "take her at her word"). In the case at bar, even though the ALJ cited to the proper framework early on in the written decision, she obviously carried through to the subsequent steps in the sequential evaluation process, providing substantial evidence in support of her mental RFC findings as noted herein.

In sum, the ALJ complied with her obligation under Section 404.1545(a) and SSR 96-8p, as she not only discussed all the relevant evidence as it related to her limitations, but she also explained what restrictions were included in the RFC assessment to accommodate them. The ALJ not only noted the evidence that demonstrated the Plaintiff's capabilities, but she also noted the evidence that caused greater limitations – this is further demonstrated by the ALJ's evaluation of the opinion evidence of record. The resulting RFC assessment is not a product of cherry-picking facts that support a finding of non-disability. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, as it was explained well in this decision, allowing for meaningful judicial review. See Mascio v. Colvin, 780

F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the ALJ's RFC determination is supported by substantial evidence.

Evaluation of Treating Provider Opinion Evidence:

The Plaintiff indicates that the RFC assessment is "[i]nextricably intertwined" with the ALJ's evaluation of her primary care provider's medical opinion (ECF No. 5 at 6), and further compounds the error in the RFC determination because the ALJ failed to adequately explain why she found Dr. Davis's opinion unpersuasive.[7]

As noted by the parties, the ALJ found Dr. Davis's opinion unpersuasive, noting for example, that "his opinion that the claimant is limited to lifting and carrying 10 pounds is inconsistent with objective findings of 5/5 grip strength bilaterally and 5/5 muscle strength in the upper extremities." (Tr. at 26, 433-437)[8] The ALJ also determined Dr. Davis's opinion is not consistent with the state agency medical consultants' opinions, both of whom found that the Plaintiff can lift and carry more: 25 pounds occasionally and 20 pounds frequently. (Tr. at 26, 57-72, 74-79) Moreover, the ALJ noted that Dr. Davis's assessed limitations were unsupported by his own treatment records, which "do not show findings of decreased strength in the upper extremities." (Tr. at 26, 527-641, 873-953)

The undersigned notes that the ALJ explicitly applied the regulatory framework pursuant to Section 404.1520c which pertains to claims filed after March 27, 2017. (Tr. at 21, 25) Additionally, the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 404.1546(c); see Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-

---

[7] To the extent the Plaintiff argues the ALJ's evaluation of a treating source opinion falls below regulatory standards espoused in the Dowling decision, the undersigned notes that contrary to the appeal presented in Dowling, the case at bar is governed under the new regulatory framework applicable to claims filed after March 27, 2017.

[8] The ALJ cited the consultative examination report from Ms. Jackson.

231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 404.1513(a)(5).

In this case, the ALJ properly applied Section 404.1520c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 404.1520c(a). Instead of assigning weight to medical opinions, the ALJ just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 404.1520c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 404.1520c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 404.1520c(b)(2)-(3).

While the Plaintiff complains the ALJ only focused on Dr. Davis's opined limitations in the Plaintiff's upper extremities, and failed to address the others (i.e., sitting/standing; unscheduled

breaks; absenteeism), the ALJ was under no obligation to do so. As noted *supra*, Section 404.1520c(a) do not mandate that an adjudicator must evaluate a medical opinion at all. Regardless, in the written decision, it is evident that the ALJ "considered" this opinion pursuant to the pertinent regulations. The undersigned observes that Dr. Davis's opinion does not even address the Plaintiff's urge incontinence or mention this diagnosis as one of the impairments likely contributing to the Plaintiff's limitations.

The foregoing demonstrates that the ALJ did not engage in impermissible cherry-picking[9] when evaluating the evidence in assessing the Plaintiff's RFC – she acknowledged both negative and positive findings, reconciled the conflicting evidence of record, and ultimately restricted the Plaintiff to a light RFC. To the extent the Plaintiff argues the ALJ should have addressed Dr. Davis's other opined limitations to further explain why she found his opinion not persuasive, it must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's determination is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id. Indeed, it is also important that an ALJ's decision must be read as a whole in

---

[9] See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (" 'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.' " (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

order to discern whether substantial evidence supports a finding.  See Keene v. Berryhill, 732 Fed.Appx. 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

Moreover, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). In this case, the ALJ stated that she considered all the evidence of record. (See Tr. at 17, 22 ("After careful consideration of all the evidence. . ."); Tr. at 18, 21 ("After careful consideration of the entire record. . ."). Having so stated, this Court should "take her at her word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."); see also, Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2020).

In this case, the ALJ complied with the pertinent regulations and provided an adequate explanation for her evaluation of Dr. Davis's opinion evidence. To the extent that the opinion was

not corroborated by the evidence of record, the ALJ was under no obligation to include those restrictions in the hypothetical to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished table opinion) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

Accordingly, the undersigned **FINDS** the ALJ's evaluation of the medical opinion provided by Dr. Davis is supported by substantial evidence.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for benefits is supported by the substantial evidence.

**<u>Recommendations for Disposition</u>**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 5), **GRANT** the Defendant's request to affirm (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 5, 2024.



Omar J. Aboulhosn
United States Magistrate Judge